**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION**

FILED

JUN 2 9 2026

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY _____
DEPUTY CLERK

MARK ANTHONY ORTEGA,
　　Plaintiff,

v.

JAX CASH BUYERS LLC, a Florida
Limited Liability Company, and
JAMES DANIEL STALLWORTH,
　　Defendants.

§
§
§
§
§
§
§
§
§
§

Case No. _____

**SA26CA4096 XR**

## PLAINTIFF'S ORIGINAL COMPLAINT

1.  This action seeks statutory damages to stop Defendants Jax Cash Buyers LLC ("Jax Cash Buyers") and its owner, James Daniel Stallworth (collectively, "Defendants"), which market themselves under the trade name "Jax Cash Buyers," from placing and directing unsolicited and unlawful telemarketing text messages to Plaintiff Mark Anthony Ortega ("Plaintiff") to sell him real property, vacant land, and lots. The messages violate the Telephone Consumer Protection Act, 47 U.S.C. § 227, et seq. ("TCPA"), and the Texas Business and Commerce Code, Chapters 302 and 305.

2.  Despite the fact that Plaintiff's telephone number has been registered on the National Do Not Call Registry for more than fourteen years, Defendants, themselves and through agents texting on their behalf and for their benefit, directed a telemarketing campaign at Plaintiff to sell Jacksonville-area real estate. After the opening messages, the follow-up messages identified neither the individual sender nor any address or telephone number at which the sender could be contacted. When Plaintiff asked the sender for a copy of Defendants' written do-not-call policy, the sender responded only, "My apologies for the inconvenience, We'll remove you from our list," and never produced the policy.

3.  Defendants' conduct has caused Plaintiff harm, including the invasion of his privacy, aggravation, annoyance, depletion of his phone battery and time.

## BACKGROUND ON THE TCPA

4.  Enacted in 1991 with bipartisan support, the TCPA aims to protect consumers from the nuisance and invasion of privacy caused by unsolicited telemarketing calls, reflecting Congress's recognition of such calls as a "scourge of modern civilization." See 137 Cong. Rec. 30821 (1991).

5.  Decades later, the TCPA remains a crucial safeguard against the ever-increasing volume of unwanted calls, which consistently rank among the top consumer complaints. See Omnibus TCPA Order, 30 FCC Rcd. 7961, 7964 (F.C.C. July 10, 2015). The TCPA remains a vital tool for combating these abuses, and its private right of action is essential to empower individuals to hold violators accountable.

6.  The TCPA strictly forbids telephone solicitations to numbers listed on the National Do Not Call Registry, 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(c)(2), and requires every person or entity engaged in telemarketing to institute minimum internal do-not-call procedures before initiating any telemarketing call. 47 C.F.R. § 64.1200(d). These provisions are designed to protect consumers from the unique harms associated with these types of intrusive calls, including wasted time, invasion of privacy, and the potential for economic loss.

7.  A seller cannot avoid TCPA liability by outsourcing its telemarketing to third parties. The TCPA's private right of action expressly reaches calls made "by or on behalf of the same entity," 47 U.S.C. § 227(c)(5), and the Federal Communications Commission has confirmed that sellers may be held vicariously liable for telemarketing violations committed by third-party marketers under federal common-law agency principles, including actual authority, apparent authority, and ratification. In re Joint Petition Filed by Dish Network, LLC, 28 FCC Rcd 6574, 6584 (2013).

## JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction over the claims asserted herein pursuant to 28 U.S.C. § 1331, which grants this court original jurisdiction of all civil actions arising under the laws of the United States. See Mims v. Arrow Fin. Servs., LLC, 565 U.S. 368 (2012) (confirming that 28 U.S.C. § 1331 grants the United States district courts federal-question subject-matter jurisdiction to hear private civil suits under the TCPA). As this action involves alleged violations of the TCPA, a federal question is presented, thus conferring jurisdiction upon this Court.

9. Additionally, this Court has supplemental jurisdiction over the claims arising under Tex. Bus. & Com. Code § 302 and § 305. While the Texas Business and Commerce Code, Chapter 302 and 305, is a state law, it complements and supplements the federal TCPA by providing additional protections to Texas residents against unwanted telemarketing calls. Under 28 U.S.C. § 1367, federal courts may exercise supplemental jurisdiction over state law claims that are so related to claims within the court's original jurisdiction that they form part of the same case or controversy.

10. In this instance, the claims under the Tex. Bus. & Com. Code § 302 and § 305, are intertwined with the TCPA claims, as they both arise from the same set of facts involving the Defendants' telemarketing calls to Plaintiff. The legal issues and factual questions involved in both sets of claims are closely related, and it would be efficient and convenient for the Court to address them together in a single proceeding. Therefore, the Court's supplemental jurisdiction is appropriate to encompass the claims arising under Tex. Bus. & Com. Code § 302 and § 305.

11. This Court has personal jurisdiction over Defendants because Defendants, themselves and through agents acting on their behalf, purposefully directed their unlawful telemarketing activities at Texas and specifically at Plaintiff, who resides in this district, by transmitting telemarketing text messages to a Texas telephone number. By soliciting business from Texas

residents, Defendants purposefully availed themselves of the privilege of conducting activities within the State of Texas.

12. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2) as a substantial part of the events giving rise to this action occurred within this district.

## PARTIES

13. Plaintiff Mark Anthony Ortega is a natural person who resided in San Antonio, Bexar County, Texas at all times relevant hereto.

14. Defendant Jax Cash Buyers LLC is a Florida Limited Liability Company, with its principal office at 4600 Touchton Road E, Suite 1150, Jacksonville, Florida 32246. Although the corporation was administratively dissolved on September 23, 2022, it has continued to transact business under the name "Jax Cash Buyers." Defendant Jax Cash Buyers LLC may be served through its president and registered agent, James Daniel Stallworth, at 65115 Mossy Creek Lane, Yulee, Florida 32097, or wherever he may be found.

15. Defendant James Daniel Stallworth is a natural person who resides in Yulee, Florida, and may be served at 65115 Mossy Creek Lane, Yulee, Florida 32097, or wherever he may be found. Each Defendant is a "person" as that term is defined by 47 U.S.C. § 153(39).

## FACTUAL BACKGROUND

16. On or about January 23, 2012, Plaintiff registered his cellular telephone number, 210-744-9663 ("Plaintiff's Number"), with the National Do Not Call Registry. Plaintiff has never de-listed this number.

17. Plaintiff is, and has been at all times relevant to this action, the regular and sole user of Plaintiff's Number.

18. Plaintiff uses his cellular phone primarily for personal, residential, and household purposes.

19. Plaintiff is the individual subscriber of the telephone number, the account is registered in Plaintiff's personal name, and Plaintiff pays his cellular telephone bill using his own personal funds and is not reimbursed by corporate funds.

20. Plaintiff uses this telephone line daily to communicate with family members, friends, and personal medical providers.

21. Plaintiff's Number is designated for residential use, as it is assigned to a consumer telephone exchange service and is not assigned to a telephone exchange service designated for business use.

22. Plaintiff's Number is registered and billed in Plaintiff's individual name; and it is paid for with Plaintiff's personal funds.

23. Plaintiff has never had any prior business relationship with Defendants, has never been a customer, has never inquired about Defendants' products or services prior to receiving the messages described below, and has never granted prior express invitation, permission, or written consent to Defendants or any entity acting on their behalf to receive telemarketing calls or text messages.

24. On Monday, April 27, 2026, at approximately 10:31 AM, Plaintiff received a telemarketing text message from telephone number (904) 849-6674. The verbatim content was: "Massive land opportunity! 40.01 acres in Raiford FL! Only $449,900 ARV up to $760K. Call James 904-605-2351. Jax Cash Buyers. Text STOP to opt out."

25. On Tuesday, April 28, 2026, at approximately 9:30 AM, Plaintiff received a second telemarketing text message from the same number, (904) 849-6674: "Jacksonville deal! Century St 32211 - 4 parcels for $112,700. Call James 904-605-2351. Jax Cash Buyers. Text STOP to opt out."

26. On Saturday, June 6, 2026, at approximately 9:01 AM, Plaintiff received a third telemarketing text message from the same number, (904) 849-6674: "Affordable Lot! 0 Lentie Rd, Jax FL 32209 5,149 SF- Only $17,500 Call James 904-605-2351 Jax Cash Buyers Text STOP to opt out." Immediately afterward, the same number sent a follow-up message providing "Photos and Other Details," a hyperlink to property photographs, a real estate identification number ("RE #: 026494-0020"), a property appraiser link, and a list of comparable sales, all further advertising the Lentie Road property.

27. Plaintiff then received three additional follow-up telemarketing messages about the same property, each sent at approximately 10:08 AM: on Monday, June 8, 2026, "Hi, Just following up does 0 Lentie Rd. match your buying criteria? It's only $17,500!"; on Friday, June 12, 2026, "We're accepting proposals on 0 Lentie Rd. Asking: $17,500 Do these numbers work for you?"; and on Friday, June 19, 2026, "Hey! What numbers work for you to move forward to this property 0 Lentie Rd. Accepting all cash offers." None of these follow-up messages identified the individual sender, the entity on whose behalf it was sent, or any address or telephone number at which the sender could be contacted.

28. Each of these messages solicited Plaintiff to purchase real property, vacant land, and lots, and encouraged Plaintiff to respond for the purpose of entering a real estate transaction.

29. On or about June 2026, after the messages described above, Plaintiff replied to the sender and requested a copy of Defendants' written do-not-call policy, stating: "Can you send me a copy of your written policy for maintaining a do-not-call list?"

30. The sender responded, "My apologies for the inconvenience, We'll remove you from our list," but did not provide the requested policy. Plaintiff reiterated his demand, stating, "I'm asking for you to provide me a copy of your written policy," and further directed, "Send the written

policy to my email mortega@utexas.edu and also after that do not contact me I'm not interested and on both the Federal and Texas do not call lists."

31. Defendant Jax Cash Buyers LLC was organized as a Florida profit corporation on June 14, 2021 under Document Number P21000055556. Defendant James Daniel Stallworth is its incorporator, president, director, and registered agent. The corporation was administratively dissolved on September 23, 2022, yet has continued to transact business under the name "Jax Cash Buyers," including by operating the website www.jaxcashbuyers.com, which displays a 2026 copyright notice, and an office at 4600 Touchton Road E, Suite 1150, Jacksonville, Florida.

32. On the company's website, Defendant Stallworth holds himself out as the owner of the business, stating: "My name is James Stallworth and I am the owner and founder of Jax Cash Buyers. My team and I will make you an AS-IS cash offer on your house within 24 hours." The telemarketing messages directed Plaintiff to "Call James," a reference to Defendant Stallworth, who personally owns, controls, and directs the business and its telemarketing.

33. The telephone numbers used to send the solicitations, (904) 849-6674 and 904-605-2351, are Voice over Internet Protocol numbers, consistent with the use of an automated text-messaging platform to conduct mass telemarketing. The automated nature of the campaign is further evidenced by the transmission of the June 8, June 12, and June 19 follow-up messages at the same time, approximately 10:08 AM, and by the generic "Text STOP to opt out" boilerplate appended to the opening messages.

34. On information and belief, Defendants do not hold, and at all relevant times did not hold, a registration certificate issued by the Texas Secretary of State authorizing telephone solicitations to purchasers located in Texas. A diligent search of the Texas Secretary of State's

publicly available telemarketer database, conducted by Plaintiff on June 24, 2026, returned no registration for Defendants. (https://direct.sos.state.tx.us/telephone/TelephoneSearch.asp)

35. None of the solicitations disclosed the complete street address of the location from which Defendants solicited Plaintiff or the complete street address of the seller's principal location. To date, Defendants have produced no written do-not-call policy and have provided no do-not-call procedures, supervision, or suppression practices applicable to their telemarketing or to the agents texting on their behalf.

36. Defendants sent more than one telephone solicitation to Plaintiff's Number within a twelve-month period. Defendants' conduct has harmed Plaintiff in the form of annoyance, nuisance, and invasion of privacy, has occupied his telephone line, and has disturbed the use and enjoyment of his phone.

## AGENCY AND VICARIOUS LIABILITY

37. The telemarketing text messages described above were sent either by Defendants' own personnel or by one or more third-party agents retained, directed, and paid by Defendants to generate real estate leads and appointments for Defendants. The identities of any such agents are known to Defendants and will be confirmed in discovery.

38. Actual authority: On information and belief, Defendants engaged or directed the senders for the specific purpose of soliciting consumers by text message; supplied or approved the campaign parameters, including the properties, prices, and terms offered in the messages; and obtained the benefit of responsive leads and appointments. The messages directed recipients to "Call James," Defendant Stallworth, the owner who controls and directs the business. Telemarketing performed at a seller's request, subject to its direction, and for its benefit is performed with the seller's actual authority.

39. Apparent authority: The senders held themselves out to Plaintiff as "Jax Cash Buyers," used Defendants' trade name, identified the callback contact as "James," and offered Defendants' properties for sale. A reasonable consumer would understand, and Plaintiff did understand, the messages to come from Defendants. On information and belief, Defendants authorized any agents to use the "Jax Cash Buyers" name in their solicitations, or knowingly permitted them to do so.

40. Ratification: Defendants knowingly accepted the benefits of the texting campaign, leads, appointments, and customers, while failing to inquire into, supervise, or correct the practices of any agents texting on their behalf. Even after Plaintiff demanded Defendants' written do-not-call policy and asked to be left alone, Defendants did not produce a do-not-call policy or take any corrective action and instead continued to solicit Plaintiff. A seller that accepts the benefits of unlawful telemarketing with knowledge of the material facts, or that willfully ignores those facts, ratifies the conduct of those acting on its behalf.

41. Accordingly, Defendants are directly liable for any messages initiated by their own personnel and are vicariously liable, under principles of actual authority, apparent authority, and ratification, for the messages any agents initiated on their behalf. Defendant Stallworth, who personally owns, controls, directs, and participates in the business and its telemarketing, is individually liable for the violations alleged herein.

42. The unauthorized telemarketing text messages that Plaintiff received from Defendants and their agents have harmed Plaintiff in the form of annoyance, nuisance, and invasion of privacy, occupied his phone line, and disturbed the use and enjoyment of his phone.

43. In response to these calls, Plaintiff brings forward this case seeking an award of statutory and actual damages and costs.

## COUNT I
### Violation of the Telephone Consumer Protection Act

**(47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(c)(2))**

44. Plaintiff realleges and incorporates by reference the allegations in paragraphs 1 through 43.

45. The TCPA prohibits any person or entity from initiating any telephone solicitation to a residential telephone subscriber who has registered his telephone number on the National Do-Not-Call Registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(c)(2). These prohibitions apply to text messages sent to wireless telephone numbers. 47 C.F.R. § 64.1200(e).

46. At all relevant times mentioned herein, Plaintiff's cellular telephone number, (210) 744-9663, was and remains registered on the National Do-Not-Call Registry. Plaintiff's number had been on the Registry continuously since January 23, 2012, for more than 31 days prior to each of the messages at issue.

47. Defendants, in violation of 47 U.S.C. § 227(c), themselves or through one or more agents acting on their behalf, initiated, or caused to be initiated, at least seven telephone solicitations to Plaintiff's registered telephone number within a single 12-month period, on April 27, April 28, June 6, June 8, June 12, and June 19, 2026, each for the purpose of encouraging the purchase of Defendants' real property and services. The TCPA provides a private right of action to any person who has received "more than one telephone call within any 12-month period by or on behalf of the same entity" in violation of the regulations prescribed under § 227(c). 47 U.S.C. § 227(c)(5).

48. Defendants did not have Plaintiff's prior express invitation or permission, nor his written consent, nor did they have an established business relationship with Plaintiff that would exempt the messages from the TCPA's prohibitions.

49. As a direct and proximate result of Defendants' violations, Plaintiff is entitled to statutory damages of up to $500 for each and every call that violated the TCPA. Furthermore, because Defendants' violations were willful and knowing, Plaintiff is entitled to, and the Court has the discretion to award treble damages up to $1,500 for each violation.

**COUNT II**
**Violation of the Telephone Consumer Protection Act**
**Failure to Institute Mandatory Internal Do-Not-Call Procedures**
**(47 C.F.R. § 64.1200(d); 47 U.S.C. § 227(c)(5))**

50. Plaintiff realleges and incorporates by reference the allegations in Paragraphs 1 through 43.

51. The TCPA and its accompanying regulations impose an affirmative obligation upon entities engaged in telemarketing to institute specific procedures before making any telemarketing calls. Specifically, 47 C.F.R. § 64.1200(d) dictates that "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive such calls made by or on behalf of that person or entity." These requirements apply to text messages sent to wireless numbers. 47 C.F.R. § 64.1200(e).

52. These mandatory minimum procedures require the telemarketer to have a written policy available upon demand (47 C.F.R. § 64.1200(d)(1)), to train its personnel engaged in telemarketing on the existence and use of the do-not-call list (47 C.F.R. § 64.1200(d)(2)), to record consumer opt-out requests (47 C.F.R. § 64.1200(d)(3)), to provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which that person or entity may be contacted (47 C.F.R. § 64.1200(d)(4)), and to maintain a record of do-not-call requests, which must be honored for five years (47 C.F.R. § 64.1200(d)(6)).

53. Defendants, themselves or through agents texting on their behalf, initiated telemarketing text messages to Plaintiff, a residential telephone subscriber, without having instituted these mandatory minimum procedures. The absence of such procedures is evident from the campaign itself: the follow-up messages identified neither the individual sender, the seller, nor any contact address or telephone number; Defendants failed to produce a written do-not-call policy upon Plaintiff's direct demand; and Defendants continued to solicit Plaintiff after his do-not-call request. Under 47 C.F.R. § 64.1200(d)(3), where do-not-call requests are "recorded or maintained by a party other than the person or entity on whose behalf the call is made, the person or entity on whose behalf the call is made will be liable for any failures to honor the do-not-call request."

54. Because Defendants failed to institute these mandatory minimum procedures prior to initiating the telemarketing campaign, every single text message Defendants or their agents sent to Plaintiff constitutes a separate violation of 47 C.F.R. § 64.1200(d).

55. The aforementioned violations were made willfully and knowingly.

56. As a direct and proximate result of Defendants' violations, Plaintiff is entitled to statutory damages of up to $500 for each and every call that violated the TCPA. Furthermore, because Defendants' violations were willful and knowing, Plaintiff is entitled to, and the Court has the discretion to award treble damages up to $1,500 for each violation.

**COUNT III**
**Violation of the Telephone Consumer Protection Act**
**Failure to Maintain a Written Do-Not-Call Policy Available Upon Demand**
**(47 C.F.R. § 64.1200(d)(1); 47 U.S.C. § 227(c)(5))**

57. Plaintiff realleges and incorporates by reference the allegations in paragraphs 1 through 43.

58. 47 C.F.R. § 64.1200(d)(1) requires that any person or entity making calls for telemarketing purposes "must have a written policy, available upon demand, for maintaining a do-not-call list."

59. In June 2026, Plaintiff made a demand for Defendants' written do-not-call policy by replying directly to Defendants' solicitation: "Can you send me a copy of your written policy for maintaining a do-not-call list?" Plaintiff reiterated the demand and directed that the policy be sent to mortega@utexas.edu.

60. Despite Plaintiff's demand, neither Defendants nor anyone acting on their behalf has produced a written do-not-call policy. On information and belief, no such written policy exists. Defendants' failure to maintain a written do-not-call policy available upon demand violates 47 C.F.R. § 64.1200(d)(1).

61. The aforementioned violations were made willfully and knowingly, as evidenced by Defendants' continued silence in the face of a written demand.

62. As a direct and proximate result of Defendants' violations, Plaintiff is entitled to statutory damages of up to $500 for each and every call that violated the TCPA. Furthermore, because Defendants' violations were willful and knowing, Plaintiff is entitled to, and the Court has the discretion to award, treble damages up to $1,500 for each violation.

**COUNT IV**
**Violation of the Telephone Consumer Protection Act**
**Failure to Identify the Caller and Seller and Provide Contact Information**
**(47 C.F.R. § 64.1200(d)(4); 47 U.S.C. § 227(c)(5))**

63. Plaintiff realleges and incorporates by reference the allegations in paragraphs 1 through 43.

64. 47 C.F.R. § 64.1200(d)(4) requires that a person or entity making a call for telemarketing purposes "must provide the called party with the name of the individual caller, the

name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted."

65. The telemarketing text messages sent to Plaintiff on June 8, June 12, and June 19, 2026 did not identify the individual sender; did not identify Defendants or any other entity as the seller on whose behalf the message was sent; and provided no telephone number or address at which the seller could be contacted.

66. Each such message constitutes a separate violation of 47 C.F.R. § 64.1200(d)(4), actionable through the private right of action in 47 U.S.C. § 227(c)(5).

67. The aforementioned violations were made willfully and knowingly. The follow-up messages omitted all identifying information precisely so that consumers like Plaintiff could not identify, contact, or demand do-not-call compliance from the seller.

68. As a direct and proximate result of Defendants' violations, Plaintiff is entitled to statutory damages of up to $500 for each and every call that violated the TCPA. Furthermore, because Defendants' violations were willful and knowing, Plaintiff is entitled to, and the Court has the discretion to award, treble damages up to $1,500 for each violation.

## COUNT V
### Violations of the Texas Business and Commerce Code
### Telephone Solicitation Without a Registration Certificate
### (Tex. Bus. & Com. Code § 302.101)

69. Plaintiff realleges and incorporates by reference the allegations in paragraphs 1 through 43.

70. Defendants, themselves and through agents acting on their behalf, engaged in "telephone solicitation" as defined by Tex. Bus. & Com. Code § 302.001(7), which expressly includes "a transmission of a text or graphic message." Furthermore, pursuant to § 302.002,

Defendants "made" a telephone solicitation at the exact moment they or their agents initiated the text messages to Plaintiff.

71. Tex. Bus. & Com. Code § 302.101 provides that a seller "may not make a telephone solicitation from a location in this state or to a purchaser located in this state unless the seller holds a registration certificate for the business location from which the telephone solicitation is made." Registration is made with the Texas Secretary of State.

72. A diligent search of the Texas Secretary of State's publicly available telemarketer database, conducted by Plaintiff on June 24, 2026, confirmed that Defendants hold no registration certificate and are not registered as telephone solicitors in Texas. (https://direct.sos.state.tx.us/telephone/TelephoneSearch.asp)

73. Pursuant to Tex. Bus. & Com. Code § 302.303, Defendants' failure to hold a registration certificate prior to making telephone solicitations constitutes a "false, misleading, or deceptive act or practice" actionable under Subchapter E, Chapter 17 of the Texas Business and Commerce Code.

74. Defendants' failure to register before placing telemarketing calls to Plaintiff constitutes multiple, separate violations of this chapter. Section 302.302(a) of the Texas Business and Commerce Code provides that a person who violates this chapter is subject to a civil penalty of no more than $5,000 for each violation.

75. Furthermore, § 302.302(d) provides that the party bringing the action is also entitled to recover all reasonable costs of prosecuting the action, including court costs, investigation costs, deposition expenses, witness fees, and attorney fees.

**COUNT VI**
**Violation of the Texas Business and Commerce Code**
**Failure to Disclose the Seller's Street Address During a Solicitation**
**(Tex. Bus. & Com. Code § 302.202)**

76. Plaintiff realleges and incorporates by reference the allegations in paragraphs 1 through 43.

77. Tex. Bus. & Com. Code § 302.202(1) strictly mandates that when a telephone solicitation is made, the seller shall provide the purchaser with "the complete street address of the location from which the salesperson is calling the purchaser" and, if different, "the complete street address of the seller's principal location." The statute imposes a conjunctive temporal requirement, stating this disclosure must be made "when a telephone solicitation is made and before consummation of any sales transaction."

78. Because Defendants' telemarketing solicitations consisted entirely of text messages, Defendants were required by law to include their complete physical street address within the body of the text messages. Defendants and their agents completely failed to include any street address in any of the telemarketing text messages sent to Plaintiff. This failure constitutes multiple, separate violations of Tex. Bus. & Com. Code § 302.202.

79. Pursuant to Tex. Bus. & Com. Code § 302.303, Defendants' failure to disclose its physical street address constitutes a "false, misleading, or deceptive act or practice" actionable under Subchapter E, Chapter 17 of the Texas Business and Commerce Code.

80. Furthermore, Tex. Bus. & Com. Code § 302.302(d) provides that the party bringing the action is also entitled to recover all reasonable costs of prosecuting the action, including court costs, investigation costs, deposition expenses, witness fees, and attorney fees.

## COUNT VII
### Violation of the Texas Business and Commerce Code
### (Tex. Bus. & Com. Code § 305.053)

81. Plaintiff realleges and incorporates by reference the allegations in Paragraphs 1 through 43.

82. Texas Business and Commerce Code § 305.053(a) explicitly provides a civil cause of action to any person who receives a communication that violates "47 U.S.C. Section 227, a regulation adopted under that provision, or Subchapter A," against "the person who originates the communication." Defendants originated the communications at issue, themselves and through agents acting on their behalf. As previously alleged, Plaintiff's telephone number has been registered on the national do-not-call registry since January 23, 2012.

83. As alleged in detail in Counts I through IV, Defendants violated 47 U.S.C. § 227 and the regulations adopted under it by initiating multiple telephone solicitations to Plaintiff's telephone number despite the number being registered on the National Do Not Call Registry, by failing to institute the mandatory internal do-not-call procedures, by failing to maintain a written do-not-call policy available upon demand, and by failing to identify the caller and seller and provide contact information in its solicitations.

84. Because Defendants' conduct violated 47 U.S.C. § 227 and the regulations adopted under that provision, Plaintiff is entitled to bring this separate cause of action for those same violations under Texas state law.

85. Pursuant to Tex. Bus. & Com. Code § 305.053(b), Plaintiff is entitled to recover the greater of his actual damages or $500 for each and every violation.

86. Furthermore, because Defendants' violations were committed knowingly or intentionally, Plaintiff is entitled to an award of treble damages up to $1,500 for each violation, as permitted by Tex. Bus. & Com. Code § 305.053(c).

## DEMAND FOR RELIEF

WHEREFORE, Plaintiff respectfully requests this Court grant the following relief against Defendants:

A. For Defendants' violations of the TCPA, 47 U.S.C. § 227(c) and 47 C.F.R. § 64.1200(c)(2) (Count I), award Plaintiff statutory damages of $500.00 for each violation, and find that Defendants' conduct was willful and knowing, thereby trebling the damages to $1,500.00 for each and every violation;

B. For Defendants' violations of the regulations prescribed under 47 U.S.C. § 227(c), 47 C.F.R. § 64.1200(d), (d)(1), and (d)(4) (Counts II, III, and IV), award Plaintiff statutory damages of $500.00 for each violation, and find that Defendants' conduct was willful and knowing, thereby trebling the damages to $1,500.00 for each and every violation;

C. For Defendants' violations of the Texas Business & Commerce Code § 302.101 (Count V), award Plaintiff statutory damages of up to $5,000.00 for each and every violation;

D. For Defendants' violations of the Texas Business & Commerce Code § 302.202 (Count VI), award Plaintiff civil penalties and/or statutory damages of up to $5,000.00 for each and every violation;

E. For Defendants' violations of the Texas Business & Commerce Code § 305.053 (Count VII), award Plaintiff statutory damages of $500.00 for each violation, and find that Defendants' conduct was knowing or intentional, thereby increasing the damages to $1,500.00 for each and every violation;

F. Award Plaintiff all reasonable witness fees, court costs, and other litigation expenses incurred by Plaintiff pursuant to Tex. Bus. & Com. Code § 302.302(d);

G. Award Plaintiff pre-judgment and post-judgment interest at the highest rates allowed by law; and

H. Grant any other and further relief, both at law and in equity, that this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Please take notice that Plaintiff, Mark Anthony Ortega, demands a jury trial in this case.

Dated: June 24, 2026.

Respectfully submitted,

Mark Anthony Ortega
Plaintiff, Pro Se
mortega@utexas.edu
PO Box 702099
San Antonio, TX 78270
(210) 744-9663